IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM SHANK, et al.,

                Plaintiffs,

v.                                    CIVIL ACTION NO.  2:15-cv-09033

SAFECO INSURANCE COMPANY
OF AMERICA,

                Defendant.

## MEMORANDUM OPINION & ORDER

Pending before the court are the plaintiffs' Motion for Summary Judgment with Respect to Insurance Coverage Issues [ECF No. 99] and the defendant's Motion for Partial Summary Judgment [ECF No. 97]. Because "[a]n insured is entitled to the protection which he buys and for which he pays," syl. pt. 3. *Wade v. Mut. Ben. Health & Accident Ass'n*, 177 S.E. 611, 611 (W. Va. 1934), and for further reasons stated below, the plaintiffs' Motion is **GRANTED** and the defendant's Motion is **DENIED**.

## I.   Background and Facts

The plaintiffs had a house fire on September 8, 2014, at 227 Dutch Hollow Road, Charleston, Kanawha County, West Virginia ("Dutch Hollow"). The home was insured under a homeowner's policy issued in 2002 by the defendant, Safeco Insurance Company of America ("Safeco"), identified by policy number OK5151394. *See* Policy 1 [ECF No. 99-1]; *see also* William Shank Dep. 11:5–8, March 7, 2016 [ECF

No. 99-1]. The plaintiffs inherited and insured a second home from Mr. Shank's aunt, known as the "Grosscup Property." William Shank Dep. 11:11–23. No one lived there until 2011, when Mrs. Shank moved in. *Id.* at 13:4–19. Mr. Shank moved there in 2012. *Id.* at 14:12–16.

From 2012 until the time of the fire, the plaintiffs used the Dutch Hollow home on a weekly basis. *Id.* at 15:3–6; *see also* Wanda Shank Dep. 10:10–15, March 7, 2016 [ECF No. 99-1]. The Dutch Hollow home was fully furnished, and the only items the plaintiffs took to the Grosscup Property—which was also fully furnished—were some clothes, jewelry, and a toothbrush. Wanda Shank Dep. 11:15–12:7. Mr. Shank had a woodworking shop in the basement and used the living room to watch television. William Shank Dep. 15:2–8, 67:11–14. Mr. Shank also used the kitchen to cook. *Id.* at 68:3–19. Mrs. Shank came to the Dutch Hollow home weekly to collect the mail and generally check on the property. Wanda Shank Dep. 10:10–15.

The plaintiffs had begun preliminary work to tear down the Dutch Hollow home on the day of the fire by removing most of the home's siding, and the utilities were turned off. Recorded Statement of William Shank No. 1 at 10 [ECF No. 97-2]; Fire Marshal Incident Report 14 [ECF No. 97-8]. All of the furnishings and plaintiffs' other personal property were in the home at the time of the fire. Wanda Shank Dep. 40:9–11.

After the fire, the plaintiffs filed a claim for their losses. The plaintiffs provided statements under oath and a seventeen page Contents Inventory, which described

the personal property lost in the fire. *See* Recorded Statement of William Shank No. 1 [ECF No. 97-2]; Recorded Statement of William Shank No. 2 [ECF No. 97-3]; Recorded Statement of Wanda Shank [ECF No. 97-4]; Contents Inventory [ECF No. 97-10].

Safeco denied coverage for the loss of the Dutch Hollow home, arguing that the plaintiffs did not "reside" there on the day of the fire. *See* Letter from Liz Tobler, Sr. Inside Claims Specialist III, Safeco Ins. Co. of Am., to Wanda R. Shank (April 29, 2015) [ECF No. 99-1]. Safeco also refused to pay and continues to refuse to pay the plaintiffs for their personal lost property, arguing that the plaintiffs have not provided enough detail regarding the loss. *See id.*

The plaintiffs filed their Complaint in the Circuit Court of Kanawha County, West Virginia, on June 2, 2015. *See* Compl. [ECF No. 1-2]. The plaintiffs alleged: (1) breach of contract, (2) common law bad faith and breach of fiduciary duty, (3) unfair trade practices, and (4) punitive damages.[1] Compl. ¶¶ 24–46. Safeco removed this case to this court on July 1, 2015. Notice of Removal 1 [ECF No. 1]. Both parties have now filed motions for summary judgment on the sole issue of whether Safeco breached its contract with the plaintiffs.

---

[1] A demand for punitive damages is not a standalone claim under West Virginia law.

## II.    Jurisdiction

The court has diversity subject matter jurisdiction over this case, as the plaintiffs and the defendant are completely diverse, and the amount in controversy exceeds $75,000. *See* Notice of Removal ¶ 3; *see also* 28 U.S.C. § 1332(a).

## III.    Legal Standard

### A.    Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving

party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B.    Applicable Law

"A federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." 32A Am. Jur. 2d *Federal Courts* § 618 (Aug. 2016 update). The Fourth Circuit has stated the principles a district court must apply in predicting uncertain state law in the context of a diversity case:

> As a court sitting in diversity, we have an obligation to interpret the law in accordance with the [decisions of the state court of last resort], or where the law is unclear, as it appears that [such court] would rule. *See Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th Cir.1992) (holding that if state law is unclear federal courts must predict the decision of the state's highest court); *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974). To forecast a decision of the state's highest court we can consider, *inter alia:* canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions. *See Liberty Mut.*, 957 F.2d at 1156.

*Wells v. Liddy*, 186 F.3d 505, 527–528 (4th Cir. 1999). Accordingly, I will apply the law of West Virginia to this case or predict how the Supreme Court of Appeals of West Virginia would rule.

## IV.   Discussion

The plaintiffs' breach of contract claim comprises two issues: (1) whether Safeco's denial of dwelling coverage was a breach and (2) whether Safeco's failure to pay for personal property coverage was a breach given the level of information and assistance the plaintiffs provided Safeco during the claims process.

### A.   Dwelling Coverage

The policy at issue states the following relevant coverage language regarding dwelling coverage:

**BUILDING PROPERTY WE COVER**
**COVERAGE A - DWELLING**

We cover:

1.   the dwelling on the ***residence premises*** shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways[.]

. . .

**POLICY DEFINITIONS**

**g.** ***"Insured"*** means:

   (1) you; and

   (2) so long as you remain a resident of the ***residence premises***, the following residents of the ***residence premises***:

      (a) your relatives;

6

>    **(b)** any other person under the age of 24 who is in
>    the care of any person described in **(1)** or **(2)(a)**
>    above.

. . .

>    **h.** *"Insured location"* means:
>
>        **(1)** the *residence premises*[.]

. . .

>    **o.** *"Residence premises"* means:
>
>        **(1)** the one, two, three or four family dwelling, used
>        principally as a private residence;
>
>        **(2)** other structures and grounds; or
>
>        **(3)** that part of any other building;
>
>        Where you reside and which is shown in your Policy
>        Declarations.

Policy 1, 25–26 (emphasis in original).

According to the Declarations Page of the policy, the named "insured" is Wanda R. Shank, and the "insured location" is the Dutch Hollow home. Policy Declarations 1 [ECF No. 99-1]. The policy's limit on dwelling coverage is $173,400, and the relevant policy period was from May 23, 2014 through May 23, 2015. *Id.*

The primary dispute is the meaning of "reside." The plaintiffs argue that "reside" is an ambiguous term and should be construed against Safeco. The plaintiffs further argue that the Safeco policy's "residence premises" provision is impermissible under West Virginia law. Safeco states that "reside" is unambiguous and requires the

plaintiffs to live at the "residence premises" and that the "residence premises" provision is permissible under West Virginia law.

### 1.    West Virginia Standard Fire Policy

"In many jurisdictions, fire insurance has been defined by statute, and, in addition, most jurisdictions have enacted a 'standard fire policy,' which prescribes the terms to be included." 10A Steven Plitt et al., *Couch on Insurance* § 149:3 (3d ed. June 2016 update). "The purpose of a statute prescribing [a] standard fire insurance policy is to protect the insureds from unexpected limitations provided by fire insurance policies." 46 C.J.S. *Insurance* § 1311 (Aug. 2016 update).

West Virginia has adopted the 1943 New York Standard Fire Policy by statute. *See* W. Va. Code § 33-17-2. The relevant provisions of the statute state the following:

> No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy; *except that with regard to multiple line coverages providing casualty insurance combined with fire insurance this section shall not apply if the policy contains, with respect to the fire portion thereof, language at least as favorable to the insured as the applicable portions of the standard fire policy* and such multiple line policy has been approved by the commissioner.

*Id.* (emphasis added); *see also Icenhour v. Cont.' Ins. Co.*, 365 F. Supp. 2d 743, 748 (S.D. W. Va. 2004) (Copenhaver, J.) ("As a 'multiple line' coverage document, the policy's fire protection component must be 'at least as favorable to the insured as the applicable potions of the standard fire policy.'" (citations omitted)).

The plaintiffs' policy is a multiple line coverage policy that includes fire coverage. *See generally* Policy [ECF No. 99-1]. The parties do no dispute that the policy has been approved by the Insurance Commissioner. Def.'s Resp. 14 [ECF No. 109]. Accordingly, the remaining question is whether the policy's "residence premises" provision is at least as favorable to the plaintiffs as the standard fire policy.

In reviewing an insurance policy, the language of the policy "should be given its plain, ordinary meaning." Syl. pt. 1, *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 486 (2004) (citation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715 (W. Va. 1970). "The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 4, *Stanley*, 602 S.E.2d at 486. "Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchs. Prop. Ins. Co. of Ind.*, 223 S.E.2d 441, 442 (W. Va. 1976). Further, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 5, *Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 700 S.E.2d 518, 520 (W. Va. 2010) (citation omitted).

Safeco maintains that the "residence premises" provision in the plaintiffs' policy is permissible despite the absence of such a provision in the standard fire policy. Def.'s Resp. 14 ("[T]he NYSFP does not contain an express 'residence premises' provision . . . ."). The standard fire policy contains the following relevant provisions:

> Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
>
> > (a)  while the hazard is increased by any means within the control or knowledge of the insured; or
> >
> > (b)  while a described building whether intended for occupancy by owner or by tenant, is vacant or unoccupied beyond a period of sixty consecutive days[.]

Standard Fire Policy 2:28–35 [ECF No. 99-1]. According to Safeco, subpart (a) permits the residency requirement because "[a] property where no one lives has a higher risk of loss than one in which someone lives. Because of the increased hazard in a property where no one resides, a 'residence premises' provision is permissible under—and no less favorable than the terms of—the [standard fire policy].[2]  Def.'s Resp. 14 (citation omitted). I disagree.

Safeco studiously avoids mentioning the standard fire policy's separate subpart regarding "vacancy" or "occupancy," which subpart squarely addresses Safeco's "increased hazard" argument. The subpart excludes fire coverage when a covered building "is vacant or unoccupied beyond a period of sixty consecutive days."

---

[2] Notably, Safeco cites only to subpart (a) in making its arguments, and Safeco makes no reference to the standard fire policy's occupancy exclusion contained in subpart (b).

Standard Fire Policy 2:33–35; *see also* 44 Am. Jur. 2d *Insurance* § 1210 (1964) ("The fact that the insured's house is unoccupied increases the hazard of fire, and, thus, the statutory condition for an insurer to avoid liability for the insured's breach of an insurance contract that the breach increased the physical hazard under the policy is satisfied . . . .").

Despite the fact that the standard fire policy embraces and accounts for Safeco's increased-risk rationale regarding vacant or unoccupied buildings, Safeco nevertheless argues that it was permitted to add a "residence premises" provision— requiring an insured to "reside" in a dwelling instead of "occupy" it.[3]

The Supreme Court of Appeals of West Virginia has not ruled on this precise issue. The term "occupancy" is not defined in the standard fire policy. I will therefore review the legal landscape and predict how the Supreme Court would rule.

According to Black's Law Dictionary, "occupancy" is defined as [t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, [especially] of a dwelling or land." Occupancy, *Black's Law Dictionary* (10 ed. 2014). "In this sense, [occupancy] denotes whatever acts are done on the land to manifest a claim of exclusive control and to indicate to the public that

---

[3] Safeco does not appear to argue that the Dutch Hollow home was "vacant." "The term 'vacancy' as used in the policy applies to inanimate objects, whereas '[o]ccupancy' refers to animate objects." *Hehemann v. Mich. Millers Mut. Ins. Co.*, 240 So. 2d 851, 854 (Fla. Dist. Ct. App. 1970) (interpreting Florida's standard fire policy); *see also* Allan E. Korpela, Annotation, *"Vacant or Unoccupied" Dwelling Within Exclusionary Provision of Fire Insurance Policy*, 47 A.L.R.3d 398 (1973) ("'Vacancy' means empty, without inanimate objects, containing nothing." (citing *Nat'l Sec. Fire & Cas. Co.*, 358 So. 2d 737 (Ala. Civ. App. 1978))). The record clearly demonstrates that the Dutch Hollow home was not vacant at the time of the fire.

the actor has appropriated the land." *Id.* "Residency," however, is defined as "[a] place of residence, [especially] an official one." Residency, *Black's Law Dictionary* (10th ed. 2014). And "residence" is defined as "[t]he act or fact of living in a given place for some time" and "[t]he place where one actually lives, as distinguished from a domicile." Residence, *Black's Law Dictionary* (10 ed. 2014). Thus, based on these definitions alone, a person may occupy a dwelling by *residing* there, but a person may also occupy a dwelling with other actions.

Courts have reached differing conclusions as to what is required to occupy a dwelling. *See generally* Allan E. Korpela, Annotation, *What Constitutes "Vacant or Unoccupied" Dwelling Within Exclusionary Provision of Fire Insurance Policy*, 47 A.L.R.3d 398 (1973). For example, in *Transcontinental Insurance Company of New York v. Frazier*, a Texas appellate court ruled that "[a] dwelling is occupied when it is in actual use by human beings, who are living in it as a place of habitation, and it is 'unoccupied' when it has ceased to be a customary place of habitation or abode." *Transcon. Ins. Co. of N.Y. v. Frazier*, 60 S.W.2d 268, 271 (Tex. Civ. App. 1933); *see also Frozine v. St. Paul Fire & Marine Ins. Co.*, 218 N.W. 845, 846 (Wis. 1928) (recognizing that "[f]or a dwelling house to be in a state of occupation there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage." (citation omitted)). However, in *A.H. Drummond v. Hartford Fire Insurance Company, Inc.*, a Missouri appellate court ruled that the following jury

instruction was proper: "[T]he word 'occupied' does not necessarily mean the actual presence of human beings, but also means occupancy for a purpose, such as by one who is there as a caretaker or watchman, not having the house as his regular living quarters. *A.H. Drummond v. Hartford Fire Ins. Co., Inc.*, 343 S.W.2d 84, 87 (Mo. Ct. App. 1960) (quotations omitted); *see also Monarch Ins. Co. of Ohio v. E.C. Rippy*, 369 P.2d 622, 625 (Okla. 1962) ("It is thus generally accepted that a person's dwelling constitutes not the boundaries but the focal point of his life. He does not cease to have a home when he is temporarily absent therefrom, nor does his home cease to be an occupied dwelling. It is not his physical presence but the habitual recurrence of that presence which renders a dwelling occupied." (citation omitted)).

The Court of Appeals of New York, the highest court in that state, examined the meaning of the occupancy provision in New York's standard fire policy as it related to a "residence premises" provision and indicated that a person may "occupy" a dwelling without "residing" there.[4]

> Further, because the term "reside" is not defined in the contract making the term "residence premises" ambiguous, it is arguable that the reasonable expectation of an average insured . . . is that occupancy of the premises would satisfy the policy's requirements. Notably, the standard fire policy as provided in Insurance Law § 3404 (e) speaks in terms of occupancy, and Insurance Law § 3404 (f) (1) (A) states that a policy "with respect to the peril of fire" cannot contain provisions "less favorable to the insured than those contained in the standard fire policy." . . . Courts have held that "[a] householder need not necessarily have conventional, or, indeed, any furniture in a house to occupy it. His presence in it for sleeping and eating and working purposes can literally

---

[4] Importantly, New York continues to use the 1943 New York Standard Fire Policy—the very policy that West Virginia currently uses and that establishes the mandatory minimum coverage a fire insurance policy must provide.

13

constitute occupancy. He can, if he will, sleep and eat on the floor or on improvised devices."

*Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 1145 (N.Y. 2012) (quoting *Page v. Nationwide Mut. Fire Ins. Co.*, 15 A.D.2d 306, 307 (N.Y. App. Div. 1962); *see also Perrotta v. Middlesex Mut. Ins. Co.*, 37 A.D.2d 783, 783 (N.Y. App. Div. 1971) (holding with regard to the occupancy provision of the standard fire policy that "the failure to sleep in the premises is not fatal to a plaintiff who had been in the premises for the eight days preceding the loss.").

According to Safeco's interpretation of the policy—and the basis for its denial of coverage—the plaintiffs were required to "live" at the Dutch Hollow home for coverage to apply. *See* Letter from Liz Tobler, *supra*, at 1 ("Based on the information provided, you had not *lived* in the home for approximately 4 years, and William had not *lived* in the home for approximately 2 years prior to the fire loss. Instead, you and he *resided* at 1129 Grosscup Avenue in Dunbar, WV . . . ." (emphasis added)). The Supreme Court of Appeals of West Virginia, however, has observed that the terms "reside" and "resident" are quite ambiguous:

> "[T]o reside" and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found. The word "residence" has been described as being "like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense."

*Farmers Mut. Ins. Co. v. Tucker*, 576 S.E.2d 261, 266 (W. Va. 2002) (quoting *Amco Ins. Co. v. Norton*, 500 N.W.2d 542, 542 (Neb. 1993)). According to the Supreme

Court, "[t]he word 'resident' certainly may include more than one place." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Shambaugh*, 747 F. Supp. 1203, 1205 (N.D. W. Va. 1990)).

Safeco argues that a separate, more general, standard fire policy provision regarding increased hazards permits the company to insert its "residence premises" provision, which requires an insured *to actually live in* the dwelling.[5] Safeco's interpretation would render meaningless the standard fire policy's exclusion regarding vacancy and occupancy because if a home is *lived in*, it is certainly not vacant nor unoccupied. Safeco's interpretation would foreclose coverage on any dwelling unless the insured frequently sleeps there.[6] Unlike the clear language of the standard fire policy that excludes coverage when a dwelling is unoccupied for sixty consecutive days, Safeco's policy provides no instruction to an insured regarding when the insured would cease to "reside" at covered location. Additionally, Safeco's agent never advised the plaintiffs that Safeco expected them to have only one "residence" at a time and would not cover both properties, even though Safeco was

---

[5] Safeco argues that this court previously ruled in *Nationwide Mutual Fire Insurance Company v. Facello* that an identical "residence premises" provision in a fire insurance contract excluded coverage in another case, and thus the "residence premises" requirement of the Safeco policy is enforceable. *See* Def.'s Mem. Supp. Mot. Summ. J. 11–12. In *Facello*, however, the insureds sold the home to a third party through a rent-to-own agreement, and the court did not address the "residence premises" provision in context with West Virginia's standard fire policy—mostly likely because the insureds did not file a response to the insurer's motion for summary judgment. *See Nationwide Mut. Fire Ins. Co. v. Facello*, No. 5:13-cv-21730, 2014 WL 801051 (S.D. W. Va. Feb. 28, 2014) (Berger, J.). Thus, the *Facello* case is factually distinguishable from the case at bar, as the plaintiffs maintained control over the Dutch Hollow home at the time of the fire, and they have raised the standard fire policy issue.

[6] Safeco masterfully avoids directly stating in its briefs what actions sufficiently establish that an insured "resides" at a covered location. Given the facts of this case, though, it appears to me that Safeco requires insureds to frequently stay the night at a covered location before the company considers them residents of the property.

accepting premiums for both. Wanda Shank Dep. 39:9–21. As applied, I **FIND** that Safeco's use of the "residence premises" provision is unlawfully more restrictive than the standard fire policy's applicable provisions.

I will now apply the standard fire policy's occupancy provision to the undisputed material facts of this case. The plaintiffs have testified that the Dutch Hollow property was fully furnished; Mrs. Shank visited the house at least weekly to check on the property and gather the mail; Mr. Shank used the house regularly. He used the woodworking shop, the kitchen, the living room, and used the library.

Even though the Dutch Hollow home was to be demolished, the house was intact at the time of the fire, contained furnishings and the plaintiffs' other personal belongings, and was used by the plaintiffs. Courts have reached different conclusions regarding what actions are sufficient to establish occupancy of a dwelling, but the Supreme Court of Appeals of West Virginia has held that "[w]hen the words of an insurance policy are, without violence, susceptible of two or more interpretations, that which will sustain the claim and cover the loss must be adopted." Syl. pt. 2, *Tucker*, 576 S.E.2d at 263.

Based on the undisputed facts contained in the record and my review of cases, treatises, and principles of West Virginia law, I predict that the Supreme Court of Appeals of West Virginia would find that the plaintiffs occupied the Dutch Hollow home. I **FIND** that Safeco has breached its contract with the plaintiffs by denying fire coverage for the loss of their Dutch Hollow home.

16

### B.    Personal Property Coverage

Safeco acknowledges that coverage exists for the plaintiffs' lost personal property at the Dutch Hollow home. *See* Letter from Liz Tobler, *supra*, at 3 ("We can afford coverage for the contents in the home that were damaged by fire, subject to the terms and conditions of the policy. However, we will need some additional information from you regarding the inventory list that was provided . . . .").

The policy imposes on the plaintiffs certain duties in the event of a covered loss. In pertinent part, the policy states the following:

**SECTION I—PROPERTY CONDITIONS**

. . .

3. **An insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

. . .

      e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, ***replacement cost*** and age. Attach all bills, receipts and related documents that justify the figures in the inventory.

Policy 11 (emphasis in originial). The plaintiffs listed personal items on their Contents Inventory form, which spanned seventeen pages. *See generally* Contents Inventory [ECF No. 97-10].

According to Safeco, "[w]hile Safeco repeatedly asked Plaintiffs to provide such an inventory, Plaintiffs did not do so. Plaintiffs provided only a list of items purportedly in the home at the time of the fire—a list completely devoid of ages or

costs of those items." Def.'s Mem. Supp. Mot. Summ. J. 13. The plaintiffs counter that "Safeco is unhappy because the Plaintiffs did not keep receipts for each item of personal property they acquired over approximately 40 years of marriage. . . . Unfortunately, the Plaintiffs, like most people, simply did not keep such records." Pls.' Resp. 16 [ECF No. 107]. The plaintiffs have stated that "they completed the Safeco inventory forms to the best of their ability and answered Safeco's multiple questions about their personal property posed during their lengthy examinations under oath." *Id.*

According to the Supreme Court of Appeals of West Virginia, "in the absence of bad faith, the law requires of the insured only a reasonable and substantial compliance with the clauses, conditions and warranties of a policy of fire insurance." *Maynard v. Nat'l Fire Ins. Co. of Hartford*, 129 S.E.2d 443, 453 (W. Va. 1963), *overruled on other grounds by Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850 (W. Va. 1991). "The object of a proof of loss pursuant to the provisions of . . . (an) insurance policy relative thereto is to give the insurer proper information as to facts which may render it liable. Such provisions are liberally construed and a reasonable and substantial compliance therewith by the insured is all that is required." Syl. pt. 2, *Petrice v. Fed. Kemper Ins. Co.*, 260 S.E.2d 276, 277 (W. Va. 1979) (citation omitted). The proof of loss provision in an insurance contract "is not to be read as a series of technical hurdles. Rather, a 'substantial compliance' with the notice provision of a policy, 'resulting in the insurer being able to adequately investigate the claim and

estimate its liabilities, is all that is required.'" *Colonial Ins. Co. v. Barrett*, 542 S.E.2d 869, 874 (W. Va. 2000) (quoting *Petrice*, 206 S.E.2d at 278).

There is no dispute of fact that the Dutch Hollow home was a complete loss. The plaintiffs testified that personal property accumulated over a course of forty years was in the home at the time of the fire, and they could not remember details about what was kept in every single drawer or where and for how much they acquired many of their possessions.

Notably, Mrs. Shank testified that she and her husband did not assist with selecting the policy limit for the loss of personal property under the policy:

> **Q:** Who picked the amount of coverage for your personal property that was listed on that policy each year that they sent to you?
>
> **A:** They did.
>
> **Q:** Did you or your husband have anything to say about the amount of that coverage for the personal property?
>
> **A:** No, sir.

Wanda Shank Dep. 35:17–24. The policy contains the following provision:

> It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. . . . Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

Policy 11.

The plaintiffs testified that Safeco set the coverage limit for their personal property, and the plaintiffs accepted Safeco's amount determination by paying timely

19

premiums. The house and its contents were a total loss, and the facts show that nearly every single item that was in the house at the time it was initially insured was in the home at the time of the fire. After the fire, the plaintiffs filed their claim, submitted to questioning under oath, and returned a Contents Inventory list to Safeco. Accordingly, I **FIND** that the plaintiffs substantially complied with the terms of their policy regarding compiling a lost property inventory.

The plaintiffs argue that even though they believe that they have substantially complied with the terms of their policy regarding their personal property loss claims, they argue that compliance is not necessary given that the Dutch Hollow home was a complete loss. Pls.' Resp. 18–19. The plaintiffs cite to *Hayseeds, Inc. v. State Farm Fire and Casualty* to support their argument:

> One example of "actual malice" would be a company-wide policy of delaying the payment of just claims through barraging the policyholder with mindless paperwork. For example, in a claim for household contents in a burned out house, the company should simply pay the face amount of the policy. Since the companies themselves often *require* a certain level of insurance on contents, it shows actual malice to require the policyholder to fill out form after form and argue for months over what, in nearly every case, is a foregone conclusion.

*Hayseeds, Inc. v. St. Farm Fire & Cas.*, 352 S.E.2d 73, 81 n.2 (W. Va. 1986) (Neely, J.).

Safeco argues, however, that the cited section of *Hayseeds* is simply *dicta* and that the law of West Virginia is clear that "Plaintiffs have to prove the value of their personal property claim, rather than simply asserting an entitlement to the personal properly policy limit." Def.'s Reply 8 [ECF No. 114]; *see also* syl., *Shinn v. W. Va. Ins.*

20

*Co.*, 140 S.E. 61, 61 (1927), *superseded by statute on other grounds* ("The basis of recovery on a fire insurance policy on personal property is the actual loss sustained, not to exceed the amount of the policy.").

"Considered dicta in the opinions of the highest state court should not be ignored; and dictum which is a clear exposition of the law must be followed unless in conflict with other decisions of that court." *Sherby v. Weather Bros. Transfer Co.*, 421 F.2d. 1243, 1244 (4th Cir. 1970). As applied to this case, the *dicta* in *Hayseeds* is not at odds with the Supreme Court's pronouncement that "[t]he basis of recovery on a fire insurance policy on personal property is the actual loss sustained, not to exceed the amount of the policy." *See Shinn*, 140 S.E. at 61. The plaintiffs' actual loss sustained is the total loss of the property that existed at the time the policy was issued, and Safeco set the amount of coverage for that property at $121,380. Based on the testimony of the plaintiffs regarding the amount of personal property lost and considering the *dicta* of the Supreme Court of Appeals of West Virginia in *Hayseeds*, I predict that the Supreme Court would rule that the plaintiffs are entitled to the "face amount of the policy" regarding their personal property loss. *See Hayseeds*, 352 S.E.2d at 81 n.2.

"An insured is entitled to the protection which he buys and for which he pays." Syl. pt. 3. *Wade v. Mut. Ben. Health & Accident Ass'n*, 177 S.E. 611, 611 (W. Va. 1934). Accordingly, I **FIND** that the plaintiffs are entitled to the policy limits established for the loss of their personal property.

## V.      Conclusion

For the reasons given above, the plaintiffs' Motion for Summary Judgment with Respect to Insurance Coverage Issues [ECF No. 99] is **GRANTED**. The defendant's Motion for Partial Summary Judgment [ECF No. 97] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      August 30, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE